UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL D. GREENE,

                Petitioner,              Case Number 03-10103-BC
                                                        Honorable David M. Lawson

v.

BLAINE LAFLER,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Michael D. Greene, presently confined at the Saginaw Correctional Facility in Freeland, Michigan, has filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted at a single trial in the Wayne County, Michigan circuit court of five armed robberies and possession of a firearm during the commission of a felony ("felony firearm"). On May 10, 1999, a Wayne County Circuit Court judge sentenced the petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of twenty to fifty years in prison for each of the armed robberies. The petitioner alleges that he is incarcerated in violation of his constitutional rights to a fair trial, to due process of law, and to effective assistance of counsel. The respondent has filed an answer to the petition asserting that the petitioner's claims are procedurally defaulted or meritless. The Court concludes that the doctrine of procedural default bars review of the prosecutorial misconduct issues, and the remaining claims do not entitle the petitioner to relief. Therefore, the Court will deny the petition.

I.

The five counts of armed robbery and one count of felony firearm arose from an incident that occurred outside Memorial Hall on Van Dyke Avenue in Detroit, Michigan on November 22, 1998. The incident also led to five counts of criminal sexual conduct in the second degree.

At about 11:00 p.m., Darnell Devine drove into the parking lot of the hall. He planned to attend a party inside the hall, but he was approached by a man dressed in dark clothing who demanded his wallet and ring. Shortly after Mr. Devine was robbed, five young women who were going to the party also were robbed of valuables by a man dressed in dark clothing. The women claimed that the robber fondled their breasts as he pretended to search them. They reported the incident to two security guards, who ran off in pursuit of the robber. The guards found the petitioner wrestling with another man on the ground in the alley behind the hall. They pulled the petitioner off the other man and detained him for the police. While the petitioner was being detained outside the hall, Mr. Devine and three of the young women identified him as the man who had robbed them.

The petitioner's defense at trial was misidentification. The jury was not persuaded and found the petitioner guilty of the armed robbery and felony firearm charges. The prosecutor agreed to dismiss one of the criminal sexual conduct counts during trial for lack of evidence and the jury acquitted the petitioner of the remaining criminal sexual conduct charges. The trial court sentenced the petitioner as noted earlier on May 10, 1999.

On appeal, the petitioner argued that: (1) a juror ignored the trial court's instructions and discussed the case outside the courtroom; (2) the prosecutor's closing argument deprived him of due process and a fair trial because, among other things, the prosecutor impermissibly commented on the petitioner's silence and the petitioner's failure to explain the evidence; (3) the prosecutor

-2-

deprived him of due process, a fair trial, and his right of confrontation by failing to produce two *res gestae* witnesses; (4) he was denied effective assistance of counsel, and the trial court abused its discretion by denying him an evidentiary hearing; (5) ineffective assistance of counsel resulted in an involuntary waiver of his right to testify; (6) the cumulative effect of the foregoing errors denied him a fair trial; and (7) he was entitled to be resentenced because the trial court administratively amended his sentence. The Michigan Court of Appeals affirmed the petitioner's convictions and sentence in an unpublished *per curiam* opinion. *See People v. Greene*, No. 220095 (Mich. Ct. App. Sept. 25, 2001).

The petitioner then applied for leave to appeal in the Michigan Supreme Court, where he raised the same claims that he presented to the Michigan Court of Appeals. In the section for "new issues," he alleged that (1) he was deprived of his right to a fair trial and his right to remain silent when the prosecutor shifted the burden of proof and (2) he was entitled to a new trial on the ground of newly discovered evidence (knowing use of perjured testimony). The supreme court denied leave to appeal. *See People v. Greene*, 466 Mich. 856, 644 N.W.2d 760 (2002) (table).

The petitioner filed his habeas corpus petition on April 14, 2003. The petition raised the eight claims that the petitioner presented to the Michigan Supreme Court. The respondent argued in an answer to the petition that the Court should dismiss the habeas petition as a "mixed" petition of exhausted and unexhausted claims. The petitioner then moved to dismiss his petition without prejudice so that he could return to state court and pursue state remedies for his unexhausted claims.

The Court determined that the only unexhausted claim was the one alleging newly discovered evidence of perjury. The Court denied the petitioner's motion, but held his case in abeyance and administratively closed the case so that the petitioner could either amend his petition

-3-

by deleting the unexhausted claim or file a motion for relief from judgment in the trial court. The petitioner then filed an amended petition for the writ of habeas corpus in which he deleted the unexhausted claim regarding newly discovered evidence of perjury. The Court re-opened the case and ordered the respondent to file an answer to the amended petition. Respondent has filed an answer, and the case is now ready for decision.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's

-4-

application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case."  *Id.* at 409.  The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .

-5-

> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## A.

The first habeas claim alleges that the petitioner was denied his right to a fair trial and an impartial jury when a juror discussed the case outside the courtroom before deliberations began. He says that the person who was overheard talking in the hallway became the jury foreman. According to the petitioner, his mother heard the foreman say that he already knew what his verdict would be. The petitioner contends that the juror was biased against him and that the trial court should have granted an evidentiary hearing on the issue.

> The Sixth Amendment to the United States Constitution guarantees a criminal defendant a trial by an impartial jury. *Morgan v. Illinois*, 504 U.S. 719, 726-27 (1992). "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) The presence of even a single biased juror deprives a defendant of his right to an impartial jury. *See Morgan*, 504 U.S. at 729.

*Williams v. Bagley*, 380 F.3d 932, 933-34 (6th Cir. 2004). A biased juror, in the usual sense, "is one who has a predisposition against or in favor of the defendant. In a more limited sense, a biased juror is one who cannot 'conscientiously apply the law and find the facts.'" *Franklin v. Anderson*, 434 F.3d 412, 422 (6th Cir. 2006) (quoting *Wainwright v. Witt*, 469 U.S. 512, 423 (1985)).

-6-

"The Sixth Amendment does not obligate state trial courts to investigate every allegation of bias or juror misconduct." *Bagley*, 38 F.3d at 949 (citing *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991)). The duty to inquire arises when a trial court is presented with evidence that an extrinsic influence, which has a reasonable potential for tainting the jury, has, in fact, reached the jury. *Ibid*. (quoting *Nevers v. Killinger*, 169 F.3d 352, 373 (6th Cir. 1999)); *see also Remmer v. United States*, 347 U.S. 227, 229-30 (1954). Examples of extrinsic influences include "an attempt to bribe a juror, a juror's application for a job in the district attorney's office, and newspaper articles and media attention." *Bagley*, 380 F.3d at 945. "Examples of 'internal' influences, in contrast, include the behavior of jurors during deliberations, the jurors' ability to hear and comprehend trial testimony, and the physical and mental incompetence of a juror." *Id*. at 945 n. 7 (citing *United States v. Herndon*, 156 F.3d 629, 634-35 (6th Cir. 1998)).

The alleged impropriety cited by the petitioner in this case falls into the category of internal influences. The trial court was not required to hold a post-verdict evidentiary hearing to examine the internal processes of the jury. *Tanner v. United States*, 483 U.S. 107 (1987). As the Supreme Court explained in *Tanner*,

> [t]here is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process. Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct.

*Id*. at 120-21 (internal and end citations omitted).

-7-

The facts in this case support the trial court's decision not to hold a hearing on the jury's internal processes. The petitioner alleged through counsel at sentencing that his mother, Irma Greene, had heard some jurors discussing the case in the courthouse hallway before they were permitted to deliberate. Although Mrs. Greene was not present at the sentence hearing, defense counsel claimed that Mrs. Greene had heard the juror, who subsequently became the foreman, press another juror for his or her opinion and agreement that there should be a conviction. Defense counsel requested an adjournment in order to produce Mrs. Greene at an evidentiary hearing on the issue of juror misconduct. The trial court denied the request and declined to hold an evidentiary hearing.

Mrs. Greene subsequently signed an affidavit stating that, on the second day of trial, she was present in a courthouse hallway when she overheard the juror who became foreman say to another person, "I already know what my verdict is going to be." Mrs. Greene also averred that she did not know the jurors were not permitted to discuss the case before they began their deliberations.

The petitioner again raised his claim of jury misconduct in a motion for new trial. He asserted, in keeping with his mother's affidavit, that his mother overheard a juror stating that he already knew what his verdict would be. During oral arguments on the petitioner's motion, the prosecutor urged the trial court to evaluate Mrs. Greene's credibility in light of the fact that she did not report the information before the conclusion of the trial and was not present at sentencing. The trial court described Mrs. Greene's credibility as "[s]uspect to say the least." Tr. Jan. 28, 2000, at 18.

The trial court denied the petitioner's motion for new trial. In doing so, the court noted that Mrs. Greene did not bring the matter to anyone's attention until after the jury was discharged. The

Michigan Court of Appeals upheld the trial court's decision not to hold a hearing, stating that relief was not warranted even if the allegations were true because "the allegations involved misconduct inherent in the verdict, not extraneous or outside errors (i.e. undue influence by outside parties)." *People v. Greene*, No. 220095, slip op. at 1 (Mich. Ct. App. Sept. 25, 2001).

A claim that a juror was pressured by a fellow juror into arriving at a particular conclusion may not be used to challenge a final verdict. *Doan v. Brigano*, 237 F.3d 722, 733 (6th Cir. 2001) (citing *Tanner*, 483 U.S. at 119-21), *abrogated on other grounds by Wiggins v. Smith*, 539 U.S. at 510. The mere possibility of a juror's preconceived notion of the guilt or innocence of an accused is insufficient to undermine a court's confidence in the outcome of a case. *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004). The possibility also exists that the jury foreman reconsidered his views during deliberations and rendered a decision based on all the evidence. The jurors notified the trial court at one point during their deliberations that they were unable to reach a decision on some of the counts, and they eventually acquitted the petitioner of the criminal sexual conduct charges. That fact is inconsistent with the notion that the jurors were irrevocably committed to finding guilt from the start. But the only way to be certain would be to conduct an investigation into the deliberation process itself, which, of course, is forbidden with good reason, as the Supreme Court explained in *Tanner*. *See Tanner*, 483 U.S. at 120-21.

The petitioner has failed to show that the jury foreman was actually biased against him and that he was denied a fair trial and impartial jury. The petitioner was not entitled to an evidentiary hearing on an internal matter involving the jurors. He is not entitled to the writ of habeas corpus because the state appellate court's conclusion was neither contrary to nor an unreasonable application of Supreme Court precedent.

B.

The petitioner next claims that he was deprived of due process and his right to confrontation when the prosecutor misstated the circumstances surrounding his apprehension. The two security guards who were working at Memorial Hall when the robbery occurred held the petitioner in custody until the police arrived. One of the security guards, Robert Turner, testified at trial. The other security guard, John Scott (sometimes referred to in the record as John "Stott"), was unavailable and did not testify. The petitioner alleges that he was denied his constitutional right of confrontation and a fair trial by the prosecutor's comment during closing arguments that John Scott beat the petitioner and held him for the police. The petitioner contends that this comment was contrary to Robert Turner's testimony that neither guard assaulted the petitioner.

The Michigan Court of Appeals reviewed the petitioner's prosecutorial misconduct claims for "plain error affecting substantial rights" because the petitioner failed to object to some of the challenged remarks. The record indicates that the petitioner did object at trial to the prosecutor's comment about the security officers beating the petitioner. *See* Tr. Mar. 23, 1999 (afternoon session), at 98-99. Therefore, this claim of prosecutorial misconduct is not procedurally defaulted and the Court will review the claim on the merits.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)), *cert. denied*, 544 U.S. 921 (2005). To prevail on a claim of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's remarks, taken in the context of

-10-

the entire trial, were sufficiently prejudicial and infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 639, 643 (1974).

The first question to consider on review of an allegation of prosecutorial misconduct is whether the prosecutor's statements were improper. *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002). If the remarks were improper, the Court then considers whether the impropriety was so flagrant as to violate the defendant's right to due process. *Ibid*. The four factors for determining flagrancy are:

> (1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused.

*United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994).

The prosecutor implied in his rebuttal argument that security guard John Scott bloodied the petitioner's face. There was no direct evidence at trial that Scott struck or beat the petitioner and caused him to bleed. However, police officer Jeffrey Rivard testified that when he arrived on the scene, the petitioner's face was bloody and one or two security guards were holding him. Rivard further testified that he was told the security guards had fought with the petitioner.

Although prosecutors may not "assum[e] prejudicial facts not in evidence," *Berger v. United States*, 295 U.S. 78, 84 (1935), they are entitled to make reasonable inferences from the evidence. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)). The comment that a security guard beat the petitioner and bloodied his face was a reasonable inference from Officer Rivard's testimony. The Court therefore finds that the prosecutor's comment was proper.

-11-

Even if it was improper, the impropriety was not so flagrant as to violate the petitioner's right to due process.  Officer Rivard admitted that he did not know how the petitioner became bloody. Officer Rivard also conceded that the security guards did not tell him that they beat the petitioner. In addition, the trial court sustained defense counsel's objection to the prosecutor's remark and reminded the jurors that the prosecutor's remark was part of closing arguments and that the jurors had heard the testimony.  The court also instructed the prosecutor to refrain from speculating on what had occurred.

The Michigan Court of Appeals concluded that the prosecutor's remarks were proper remarks based on the evidence and the reasonable inferences drawn therefrom.  This conclusion was not contrary to or an unreasonable application of clearly established federal law.

C.

The third habeas claim alleges that the prosecutor shifted the burden of proof and violated the petitioner's right to remain silent when he stated that the petitioner did not deny touching the women's chests and did not explain an incriminating comment that he made to a guard.  The petitioner had allegedly said to one of the security guards who detained him, "I don't know why I did it" and " I'm giving their stuff back" or "I'm going to give them their stuff back."  Tr. Mar. 23, 1999, at 18.  The Michigan Court of Appeals did not discuss the merits of this claim because the defendant did not object to the prosecutor's remarks at trial.  The state court concluded that there was no plain error and any impropriety could have been cured by a timely objection.  The state court, therefore, relied on its procedural rule, which respondent contends is an independent and adequate state law ground precluding federal review.

-12-

The failure to lodge a contemporaneous objection can constitute an adequate and independent state law ground that insulates a federal claim from review on the merits by a federal court. Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72 (1977); *Couch v. Jabe*, 951 F.2d 94 (6th Cir. 1991). The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Application of the cause-and-prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust v. Zent,* 17 F.3d 155, 162 (6th Cir. 1994); *see Murray v. Carrier*, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001); *see also Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30. Finally, the procedural default must rest on an "adequate and independent" state ground. *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

-13-

In this case, it appears that a state procedural rule was in place during the relevant time, namely that a defendant must object at trial to instances of prosecutorial misconduct. *See, e.g., People v. Grant*, 445 Mich. 535, 546, 520 N.W.2d 123, 128 (1994) ( "As a general rule, issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances."). Although Michigan state courts "frequently waive the contemporaneous objection rule when they perceive the issue to have significant constitutional import," the contemporaneous objection rule was firmly established with respect to claims of prosecutorial misconduct at the time of the petitioner's trial. *Bentley v. Bock*, 239 F. Supp. 2d 686, 693-94 (E.D. Mich. 2002). Thus, the contemporaneous objection rule with respect to claims of prosecutorial misconduct is an adequate and independent state ground on which to deny relief. *See ibid*.

It also appears that the Michigan courts actually enforced the procedural rule in this case. The last state court to issue a reasoned opinion on these claims, the Michigan Court of Appeals, reviewed the petitioner's prosecutorial-misconduct claims for plain error and invoked a procedural rule – the failure of trial counsel to object at trial to the prosecutor's conduct – as a ground for denial of relief.

Because it appears that the petitioner has procedurally defaulted these prosecutorial misconduct claims, the remaining question is whether the petitioner has demonstrated "cause" for the failure to adhere to the procedure in place, and "prejudice" that flows the application of the rule. *See Broom v. Mitchell*, 441 F.3d 392, 401 (6th Cir. 2006).

The "cause and prejudice" argument must be deemed abandoned here because the petitioner has not offered any argument in support of a finding of "cause and prejudice." *Roberts v. Carter*,

-14-

337 F.3d 609, 613 (6th Cir. 2003). A petitioner may overcome a procedural default in the absence of "cause and prejudice" upon a showing of actual innocence. *Lott v. Coyle*, 261 F.3d 594, 620 (6th Cir. 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995), and *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). The miscarriage of justice exception applies in the extraordinary case where the habeas petitioner demonstrates that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. at 388; *Murray v. Carrier*, 477 U.S. at 496. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo*, 513 U.S. at 324. "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id*. at 327. In other words, the petitioner must show "that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, __ U.S. __, __, 126 S. Ct. 2064, 2077 (2006).

The petitioner has made no such showing in this case. Consequently, a miscarriage of justice will not occur from this Court's failure to adjudicate the substantive merits of the petitioner's claim. The petitioner's third claim is procedurally defaulted and this Court will not review it on the merits.

D.

The fourth habeas claim alleges ineffective assistance of trial counsel.  To show a violation of the right to effective assistance of counsel, a petitioner must establish first that his attorney's performance was deficient "in that it fell below an objective standard of reasonableness."  *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  The second aspect of the test is a demonstration of prejudice, that is, a showing that counsel's deficient performance may have altered the results of the trial.  *Id.*

An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at 687.  The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  *Id.* at 687.

1.

The petitioner alleges that his attorney should have sought the production of two *res gestae* witnesses (police officer Paul White and security guard John Scott) or demanded a due diligence hearing on the State's efforts to produce the witnesses.  John Scott was acting as a security guard

with Robert Turner on the night in question, and Officer White responded to the crime scene with Officer Jeffrey Rivard.

The testimony of Scott and White would have been largely cumulative to the testimony of Rivard and Turner, whose testimony was not favorable to the petitioner.  Moreover, the prosecutor informed the trial court that he had notified John Scott of the trial and that Scott was unavailable.  The prosecutor also elicited testimony that Scott was living out of state, his whereabouts were unknown, he was working in Texas, and he traveled a great deal.  Therefore, defense counsel was not ineffective for failing to seek the production of White and Scott or for failing to demand a due diligence hearing.

2.

The petitioner asserts that his attorney should have objected to the complainants' prior identification of him and to hearsay testimony that bolstered the complainants' identification testimony.  The petitioner has not supported this claim with any facts or arguments.  The Court presumes that he is referring to:  (1) Officer Jeffrey Rivard's testimony that the security guards informed him that the man they were holding had robbed a couple of people; (2) security guard Robert Turner's testimony that Darrell Devine and the female victims identified the petitioner at the scene as the person who robbed him; and (3) the victims' testimony that they identified the petitioner at the scene.

Because the declarants testified at trial and were subject to cross-examination on their identification of the petitioner, the statements are not hearsay under state evidence law.  *See* Mich. R. Evid. 801(d)(1)(C).  Nor does this evidence violate the Confrontation Clause.  *See United States v. Owens*, 484 U.S. 554, 560 (1988).

-17-

Because the challenged statements were not hearsay and did not violate the petitioner's right to confront witnesses, defense counsel was not ineffective for failing to object to the identification testimony at trial.

3.

The petitioner complains that his attorney did not argue effectively for the exclusion of the petitioner's prior conviction for unlawfully driving away an automobile (UDAA). The attorney acquiesced in the prosecutor's argument that the petitioner could be impeached with his prior conviction for UDAA.

The Michigan Court of Appeals determined that defense counsel erred to the extent that he concluded the UDAA conviction was admissible. However, even assuming that defense counsel operated under a mistake of law, the petitioner was not prejudiced by the error because he did not testify and there was no mention of his prior conviction for UDAA at trial. Under the Federal Rules of Evidence, "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." *Luce v. United States*, 469 U.S. 38, 43 (1984). Michigan has adopted that approach as well. *See People v. Finley*, 431 Mich. 506, 521, 431 N.W.2d 19 (1988).

The petitioner might have testified if his UDAA conviction had been suppressed. However, defense counsel was able to present a defense of misidentification adequately without the petitioner's testimony. It is unlikely that the result of the trial would have been different had the petitioner testified that he was not the robber because the eyewitness testimony to the contrary was strong.

4.

-18-

The petitioner contends that his attorney failed  to effectively cross-examine the complainants with their prior statements and failed to introduce evidence of perjury.  The petitioner has not identified the prior statements in dispute or any perjury.  In his state appellate court brief, he argued that defense counsel should have cross-examined Darnell Devine about his inconsistent testimony at the preliminary examination.   The petitioner noted that Devine testified at the preliminary examination that he drove away immediately after the robbery in which the robber took his watch, but returned to the hall fifteen or twenty minutes later, and then he left a second time. The petitioner alleged that Devine's trial testimony differed in that he did not mention having his watch stolen, he shortened the time that he returned to the hall after the robbery, and he expanded on his activities after the robbery.

These discrepancies were minor differences in the testimony and are not a basis for concluding that Devine perjured himself.  Defense counsel was not ineffective for failing to cross-examine Mr. Devine about his prior testimony or for failing to assert that Devine perjured himself at trial.

5.

The petitioner alleges next that his attorney did not advance an effective defense of misidentification in challenging the tainted on-the-scene identification by failing to seek the assistance of an expert witness on identification.  It has been noted on several occasions that "[t]he vagaries of eyewitness identification are well known; the annals of criminal law are rife with instances of mistaken identifications."  *United States v. Wade*, 388 U.S. 218, 228 (1967).  It is a "scientifically and judicially recognized fact that there are serious limitations on the reliability of eyewitness identification of defendants" and "that frequently employed police and prosecution

-19-

procedures often (and frequently unintentionally) mislead eyewitnesses into misidentification of the defendant." *People v. Anderson*, 389 Mich. 155, 172, 205 N.W.2d 461, 468 (1973), *overruled on other grounds by People v. Hickman*, 470 Mich. 602, 684 N.W.2d 267 (2004). It is also a "historical and legal fact that a significant number of innocent people have been convicted of crimes they did not commit and the real criminal was left at large." *Id*.

However, the petitioner had no constitutional right to an expert witness on eye-witness identification, *Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001), and this is not a case where defense counsel's performance undermines the Court's confidence in the outcome of the trial. To his credit, defense counsel elicited testimony that: Darnell Devine saw the robber's face for only a matter of seconds, Tr. Mar. 22, 1999, at 112-14; the security guards informed Yolanda Thomas and Amelia Moss that they had caught the robber, *Id*. at 148 and 203-04; the petitioner was in the custody of police officers when Amelia Moss identified him, *Id*. at 202; and the sole victim who was unable to identify the petitioner at trial had stood about two feet from the robber and looked at him for a total of five minutes. *Id*. at 49-51.

Even if an expert witness could have discredited the testimony of the eyewitnesses, there was testimony that the petitioner said to a security guard, "I don't know why I did it. I'm going to give them their stuff back." Tr. Mar. 23, 1999, at 18. The Court concludes that defense counsel's presentation of a misidentification defense was not deficient and did not prejudice the petitioner.

6.

The petitioner alleges next that his attorney should have investigated the cab driver that dropped him off at Memorial Hall. The petitioner apparently wanted to suggest to the jurors that he was not the robber, but just another victim. The evidence at trial, however, indicated that the

-20-

petitioner got out of a car driven by a man who remained in the area until after the police arrived and actually talked to the police. Even if defense counsel could have established that the petitioner was dropped off at the hall by a cab driver, that evidence would not have exculpated the petitioner, because the petitioner could have committed the robberies even if he arrived by cab. With five eyewitnesses testifying that the petitioner was the robber, evidence of the petitioner's method of transportation would not have affected the outcome of the case. Therefore, defense counsel was not ineffective for failing to investigate the petitioner's assertion that a cab driver drove him to Memorial Hall.

7.

The petitioner alleges that the jury array did not represent a fair cross-section of the Wayne County community and that his attorney should have objected to the array. The Sixth Amendment right to an impartial jury includes the right to a jury drawn from a "fair cross section of the community." *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975). "Defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id.* at 538 (internal citations omitted).

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).

The petitioner is an African American, and African Americans are a distinctive group for purposes of Sixth Amendment analysis and the *Duren* test. *Randolph v. California*, 380 F.3d 1133,

-21-

1140 (9th Cir. 2004). The foreman of the jury also was an African American, Tr. Jan. 28, 2000, at 19, but the petitioner does not allege, and the record does not indicate, the percentage of African Americans in the jury venire. In his state appellate court brief, the petitioner alleged only that African Americans constituted over 40% of the county population in 1990 and that there were just a few African-Americans in the jury array.

The petitioner has not alleged the percentage of African Americans who were eligible for jury duty in Wayne County at the time of his trial. He also has not alleged the percentage of African Americans in his jury venire. Nor has he shown that African Americans were systematically excluded from jury venires in Wayne County at the time. The petitioner has failed to establish that there were facts from which his attorney could have argued that the jury array violated his right to be tried by a fair cross-section of the community. The Court therefore finds that defense counsel was not ineffective for failing to attack the venire as being unrepresentative of the African American population in Wayne County.

8.

The Michigan Court of Appeals determined that the petitioner was not deprived of effective assistance of counsel. This conclusion did not result in a decision that was contrary to or an unreasonable application of *Strickland v. Washington*. The petitioner, therefore, is not entitled to the writ of habeas corpus on the basis of his ineffective-assistance-of-counsel claim.

E.

The fifth habeas claim alleges that the cumulative effect of the errors deprived the petitioner of his right to a fair trial and due process of law. This claim has no merit because "the Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."

-22-

*Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Therefore, it cannot be said that the state court's judgment was contrary to any Supreme Court decision so as to warrant habeas relief under 28 U.S.C. § 2254(d). *Ibid.; see also Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Any possible harm from the petitioner's claims, even when combined, is insufficient to undermine the Court's confidence in the outcome of the verdict. *Cf. Tinsley v. Million*, 399 F.3d 796, 816 (6th Cir. 2005).

F.

The sixth habeas claim alleges that defense counsel failed to inform the petitioner that he had an absolute right to testify at trial. The petitioner claims that although he wanted to testify, his lawyer did not permit him to testify and the lawyer failed to advise him that it was his decision to make. The petitioner maintains that as a result of his lawyer's defective advice, his waiver of the right to testify was involuntary.

All criminal defendants, including the petitioner, have a constitutional right to testify in their own behalf. *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). This right is personal to the defendant and may be relinquished only by the defendant. *United States v. Joelson*, 7 F.3d 174, 177 (6th Cir. 1993). Relinquishment of the right must be knowing and intentional. *Ibid.* Defense counsel's role is to advise the defendant whether to testify, but the ultimate decision is for the defendant to make. *United States v. Hover*, 293 F.3d 930, 933 (6th Cir. 2002). However, "when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed." *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000).

> This is so because the defendant's attorney is presumed to follow the professional rules of conduct and is 'strongly presumed to have rendered adequate assistance' in carrying out the general duty 'to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the

-23-

> defendant informed of important developments in the course of the prosecution.'
> *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984).

*Ibid.* (footnote omitted).

Defense counsel informed the trial court before *voir dire* that the petitioner was the only defense witness. However, at the close of the prosecution's case, the petitioner informed the trial court that he did not intend to take the stand and that it was his decision not to testify. Tr. Mar. 23, 1999 (afternoon session), at 37-38. He gave no indication during trial that he wanted to testify or that he disagreed with defense counsel about whether he should give testimony. In addition, he has failed to show any evidence of coercion or that his decision not to testify was involuntary or unknowing. Therefore, the petitioner's assent in the decision not to testify is presumed, as is the effectiveness of his attorney. *See Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000). The state court's conclusion that the petitioner had not shown that he was deprived of the right to testify at his trial was not contrary to, or an unreasonable application of, clearly established federal law.

## G.

The petitioner's seventh and final claim concerns his sentence. The petitioner was on parole when he committed the crimes in this case, and he initially was ordered to serve his armed robbery sentences concurrently with the sentence for which he was on parole. The Michigan Department of Corrections subsequently asked the trial court whether its intent was to have the sentence run consecutively to the prior sentence. The trial court then amended the judgment of sentence to make the sentences run consecutively to the parole sentence.

The petitioner alleges that the amended judgment of sentence is invalid because he was not notified of it in advance and had no opportunity to be heard before the trial court amended his sentence. The Michigan Court of Appeals ruled that a full resentencing was not required before the

judgment of sentence was amended because the trial court was aware at the sentencing that the petitioner committed the offense while on parole.

To the extent that the petitioner is alleging a violation of state law, his claim is not cognizable here because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241 and *Rose v. Hodges*, 423 U.S. 19, 21 (1975)).

The petitioner couches his claim in terms of due process; "[i]t is undisputed that convicted defendants . . . . have a due process right to a fair sentencing procedure." *United States v. Anders*, 899 F.2d 570, 575 (6th Cir. 1990) (quoted in *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000)). The sentencing procedures here were fair because the probation officer stated in the presentence report that although the prosecutor did not provide a statement regarding consecutive sentencing, consecutive sentencing has applied in similar cases. In addition, at the petitioner's sentencing hearing on May 10, 1999, the trial court stated that the petitioner was "on parole from another very serious felony" when he committed the crimes in this case. The trial court also declined to give the petitioner jail credit precisely for that reason. The petitioner made no objection to these remarks.

The petitioner was not denied a fair sentencing procedure when the trial court *sua sponte* amended the judgment of sentence because he was put on notice of the possibility of a consecutive sentence and he did not object to the factual predicate for consecutive sentences (i.e. being on parole) as stated in the presentence report. The state appellate court's ruling did not result in a decision that was contrary to any Supreme Court decision.

III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The issue alleging prosecutorial misconduct was not properly preserved and has been procedurally defaulted. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 23, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 23, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS